Case 4:22-cv-02260   Document 1   Filed on 07/07/22 in TXSD   Page 1 of 7

United States Bankruptcy Court
United States District Court
Southern District of Texas
**ENTERED**
July 07, 2022
Nathan Ochsner, Clerk

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO: 20-33295 |
| COVIA HOLDINGS CORPORATION, *et al.*, | § | |
| | § | CHAPTER 11 |
| Debtors. | § | |
| | § | |
| COVIA HOLDINGS CORPORATION, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | ADVERSARY NO. 20-3345 |
| | § | |
| SAND REVOLUTION II, LLC, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**REPORT AND RECOMMENDATION TO THE UNITED STATES DISTRICT COURT REGARDING THE WITHDRAWAL OF THE REFERENCE**
(Docket No. 73)

Sand Revolution, LLC and Fevid Transport LLC (the "Defendants") seek the withdrawal of the reference of this adversary proceeding to the District Court. For the reasons set forth below and pursuant to LOC. BANKR. R. 5011-1, the Court recommends to the District Court that the motion be denied.

## Background

The Pre-Bankruptcy Relationship

Covia Holdings Corporation (the "Debtor") provides sand for use in oil and gas drilling operations. [Case No. 20-33295, Docket No. 317]. The Defendants provide logistical services for the delivery of sand and other materials to on-site well locations in the Permian Basin using a proprietary delivery system. [Docket No. 30].

On November 21, 2018, the Debtor contracted with the Defendants to provide logistical services using up to five of the Defendants' proprietary systems (the "Contract"). [Docket No. 30-1, -2]. As part of the agreement, the Debtor deposited the sum of $15 million with the Defendants (the "Deposit"). [Docket No. 30]. For each of the Defendants' systems that was utilized, a monthly amount of up to $100,000 would be deducted from the Deposit and applied toward the Debtor's outstanding invoices. [Docket No. 30]. The Deposit was secured by liens on the Defendants'

equipment. [Docket No. 30]. The Contract contains several mechanisms for the return of part or all of the Deposit under certain enumerated conditions. [Docket No. 30-1].

By letter dated May 4, 2020, the Defendants terminated the Contract based on the Debtor's alleged insolvency. On May 12, 2020, the Defendants added an additional ground for termination asserting the Debtor had breached the Contract. Concurrent with the termination notice, the Defendants initiated litigation in Texas state court. In their second amended petition, the Defendants represented that:

> The parties agreed to a structure whereby Covia advanced $15 million to Sand Revolution in exchange for security interests in five new systems, preferential access and pricing rights, and Sand Revolution's commitment to repay $15 million to Covia over three years.

The Defendants further acknowledged that the balance of the Deposit at the time of termination was at least $12,766,700.

The Chapter 11 Proceedings

On June 29, 2020, the Debtor and twenty-seven affiliates filed voluntary chapter 11 cases. [Case No. 20-33295, Docket No. 1]. The Court confirmed the Debtors' joint plan of reorganization (the "Plan") by Order entered December 14, 2020 (the "Confirmation Order"). [Case No. 20-33295, Docket No. 1029]. The Plan became effective on December 31, 2020 (the "Effective Date"). [Case No. 20-33295, Docket No. 1069].

On September 15, 2020, the Defendants filed a proof of claim asserting a claim in the amount of $595,750 based on the Debtor's alleged breach of the Contract (the "Proof of Claim"). [Claims Docket No. 96].

The Adversary Proceeding

Prior to confirmation, a dispute developed over the return of the Deposit with each party asserting multiple legal theories in support of its position. On July 31, 2020, the Debtor initiated this adversary proceeding. [Docket No. 1]. Included in the complaint were claims for (i) turnover under 11 U.S.C. § 542; and (ii) violation of the automatic stay. [Docket No. 1].

The Defendants filed their answer on September 22, 2020. [Docket No. 7]. In the answer, the Defendants agreed that this adversary is a core proceeding and that this Court has subject matter jurisdiction. [Docket No. 7]. The Defendants further consented to the entry of a final judgment by this Court. [Docket No. 7].

Pursuant to the Court's order entered January 10, 2022 [Docket No. 29], the Debtor filed its amended complaint on January 11, 2022. [Docket No. 30]. The amended complaint asserts claims for breach of the Contract and violation of the Confirmation Order. [Docket No. 30]. The amended complaint also includes an objection to the Proof of Claim. [Docket No. 30].

On January 31, 2022, the Defendants filed their motion to dismiss asserting that this Court lacked subject matter jurisdiction over the dispute and that the Debtors had failed to join an indispensable party. [Docket No. 33]. The Debtor filed its response on February 10, 2022. [Docket No. 34]. The Defendants filed their reply on February 24, 2022. [Docket No. 41].

On March 4, 2022, the Defendants filed a jury demand and disavowed the prior statements and consent set forth in their original answer. [Docket No. 42]. The Defendants also filed a motion to withdraw the automatic reference based, in part, on the newly asserted jury demand. [Docket No. 43]. Finally, in recognition of their self-created quandary,[1] the Defendants filed a motion to withdraw their proof of claim in the main bankruptcy proceeding. [Case No. 20-33295, Docket No. 1454].

The Court conducted a hearing on the motion to dismiss on March 15, 2022. At the conclusion of the hearing, the Court denied the motion. [Docket No. 52].

On March 29, 2022, the Defendants filed their answer to the Debtor's first amended complaint. [Docket No. 59]. The answer contains a second jury demand and includes a laundry list of eleven unsupported affirmative defenses. [Docket No. 59].

The Court conducted a hearing of the Defendants' motion to withdraw the reference on April 12, 2022. [Docket No. 68]. After a lengthy dialogue between counsel and the Court, the Defendants withdrew their motion to withdraw the Proof of Claim. [Docket No. 68]. Given the effect of the withdrawal, the Court granted leave to the Defendants to amend their motion to withdraw the reference. [Docket No. 68].

On May 6, 2022, the Defendants filed their amended motion for withdrawal of the reference. [Docket No. 73]. The Debtor filed its objection on May 16, 2022. [Docket No. 74]. After a hearing on May 19, 2022, the Court took the matter under advisement to issue a report and recommendation to the District Court. [Unnumbered Docket Entry after Docket No. 78].

## Applicable Standard

A "district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion, or on timely motion of any party, for cause shown." 28 U.S.C § 157(d). The party seeking withdrawal of the reference bears the burden of establishing cause. *F. Joseph Morrison, v. Amway Corp*. (*In re Morrison*), 409 B.R. 384, 389 (S.D. Tex. 2009). Cause for withdrawal must be premised upon a "sound articulated foundation." *Vela v. Enron Oil & Gas Co*., No. 02-5010, 2007 WL 1564562, at *2 (S.D. Tex. May 29, 2007). When evaluating a request for permissive withdrawal under § 157(d), a court should evaluate the six *Holland* factors. *In re Quality Lease and Rental Holdings, LLC*, No. 14-6005, 2016 WL 416961, at *4 (Bankr. S.D. Tex. February 1, 2016) (citing *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d, 992, 999 (5th Cir. 1985)). The six factors are: (i) the presence of a jury trial; (ii) whether the proceeding is core or non-core; (iii) whether withdrawal would promote uniformity in bankruptcy administration; (iv)

---

[1] Although addressed in a slightly different manner herein, common vernacular in a bankruptcy proceeding is that the filing of a proof of claim waives a jury trial right with respect to all matters related to the proof of claim.

whether withdrawal would expedite the bankruptcy process; (v) whether withdrawal produces forum shopping and confusion; and (vi) whether withdrawal would foster a more economical use of the parties' resources. *Id.*

## Analysis

*Factor 1: The right to a jury trial and the presence of a proper jury demand.*

When party properly asserts a right to a jury trial and does not consent to a jury trial before the bankruptcy court, withdrawal of the reference is required. *See In re Clay*, 35 F.3d 190, 195, 197-198 (5th Cir. 1994); *In re Quality Lease*, 2016 WL 416961, at *5. In this adversary proceeding, the Defendants have twice requested a jury trial and twice stated that they do not consent to a jury trial before the Bankruptcy Court. Accordingly, the Court must determine if a jury trial right exists.

The Seventh Amendment provides for the right to a jury trial in suits at common law where the value in controversy exceeds twenty dollars. *U.S. Const. amend. VII*. A suit "at common law" refers to a suit "in which legal rights were to be ascertained and determined" as opposed to those "where equitable rights alone were recognized, and equitable remedies were administered." *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 41 (1989). Differentiating "suits at common law" from equitable proceedings requires a two-step analysis: (1) a comparison of the claim to 18th century actions brought at law in the courts of England before the merger of the courts of law and equity; and (2) whether the remedy sought is legal or equitable in nature. *Id.* at 42. The second stage of this analysis is more important than the first. *Id.* A request for a money judgment generally indicates that the claim should be denominated as legal rather equitable. *See id.* at 47; *Dairy Queen Inc. v. Wood*, 369 U.S 469, 476 (1962).

With respect to the Debtor's claim for breach of the Contract and the requested remedy for monetary damages, the Court finds that the claim, standing alone, is legal in nature. *See Wilborn v. Wells Fargo Bank, N.A.* (*In re Wilborn*), No. 07-3481, 2008 WL 2078089 at *1 (Bankr. S.D. Tex. May 15, 2008) (citing to *Granfinanciera,* 492 U.S. at 42). However, when a litigant files a proof of claim, it submits the resolution of all matters related to the resolution of that proof of claim to the Court's equitable power and transforms what was a legal dispute into an equitable proceeding. *See Granfinanciera* 492 U.S. at 43-44, 56, 58. This transformation negates the right to a jury trial. *Id.* With respect to the remaining claim for enforcement of the Confirmation Order and the Claim Objection, no genuine dispute exists that such claims are equitable in nature. *See In re A.P.I. Inc*. 331 B.R. 828, (Bankr. D. Minn. 2005); *Granfinanciera*, 492 U.S. at 58 (noting that a dispute that is integrally related to allowance or disallowance of a proof of claim is equitable in nature).

Recognizing the issue, the Defendants attempt to fit this case into one of two narrow exceptions that provide for the preservation of a jury trial right when the (i) the proof of claim is purely "defensive" in nature; or (ii) the filing of the proof of claim does not constitute a knowing and willful surrender of the jury trial right. [Docket No. 73]. To the extent that such exceptions are even recognized, neither is applicable to this adversary. First, the Defendants' proof of claim

reflects no intent that it was filed solely as a defensive mechanism. Likewise, the record reflects no testimony from the person signing the proof of claim or other evidence as to its "defensive intent." Counsel's attempts to later explain the proof of claim's purpose, while creative, are ineffective. *See EXDS, Inc. v. RK Electric, Inc.*, (*In re EXDS, Inc.*), 301 B.R. 436, 440 (Bankr. D. Del. 2003.) (holding that once a proof of claim is filed and objected to, the waiver of the jury trial right is effective).

Second, courts in this circuit do not require that a party filing a proof of claim take some independent action that "knowingly, voluntarily, and intelligently" waives its jury trial right. *See Condrey v. Endeavour Highrise, L.P.* (*In re Endeavor Highrise, L.P.*), 425 B.R. 402, 408 n.3 (Bankr. S.D. Tex. 2010); *In re Pioneer Carriers, LLC*, 583 B.R. 891, 898 (Bankr. S.D. Tex. 2018); *U.S. Bank Nat'l Ass'n v. Verizon Commc'ns Inc.*, No. 3:10-CV-1842-G, 2012 WL 987539, at *4 (N.D. Tex. Mar. 21, 2012) ("Having reviewed the Supreme Court's opinions in both *Granfinanciera* and *Langenkamp*, this court concludes that there is no requirement that a creditor that files a claim also 'knowingly, voluntarily, and intelligently' waive its jury trial right."), *aff'd* 761 F.3d 409 (5th Cir. 2014); *see also Katchen v. Landy,* 382 U.S. 323 (1966).

This factor supports denial of the motion to withdraw the reference.

*Factor 2: Core v. Non-Core Claims.*

When considering a motion for withdrawal of the reference, a majority of courts place special emphasis on whether the claims at issue are core or non-core. *In re Quality Lease*, 2016 WL 416961, at *5. Core proceedings are those that invoke a substantive right provided by title 11 or could arise only in the context of a bankruptcy case. *Morrison v. W. Builders of Amarillo, Inc.* (*In re Morrison*), 555 F.3d, 473, 479 (5th Cir. 2009) (citing to *In re Wood*, 825 F.2d 90, 97 (5th Cir. 1987)). In contrast, non-core proceedings are those which are related to a bankruptcy case but do not arise in or arise under the Bankruptcy Code. 28 U.S.C. § 157; *South St. Seaport Ltd. P'ship v. Burger Boys, Inc.* (*In re Burger Boys, Inc.*), 94 F.3d 755, 762 (2d Cir. 1996).

In this adversary, each of the claims asserted by the Debtor constitutes a core proceeding. The Debtor's objection to the Defendants' claim is a core proceeding under 28 U.S.C. § 157(b)(2)(B). *S.G. Philips Constructors, Inc. v. City of Burlington* (*In re S.G. Philips Constructors, Inc.*), 45 F.3d 702, 705 (2d Cir. 1995) (noting that "[b]ecause 'nothing is more directly at the core of bankruptcy administration…than the quantification of all liabilities of the debtor,' the bankruptcy court's determination whether to allow or disallow a claim is a core function"). The Debtor's claim for enforcement of the Court's Confirmation Order is likewise a core proceeding under 28 U.S.C. § 157(b)(2)(L) and (O). *Rodriguez v. Countrywide Home Loans* (*In re Rodriguez*), 396 B.R. 436, 453 (Bankr. S.D. Tex. 2008) (citing to *National Gypsum Co. v. NCG Settlement Trust & Asbestos Claim Mgmt. Corp.* (*In re National Gypsum*), 118 F.3d 1056, 1063 (5th Cir. 1997). Finally, the Debtor's claim to recover balances under the very contract that forms the basis of the Defendants' proof of claim is a core proceeding under 28 U.S.C. § 157(b)(2)(C) and (O).

This factor supports denial of the motion to withdraw the reference.

*Factor 3: Whether withdrawal would promote uniformity in bankruptcy administration.*

The Court is currently immersed in the claims adjudication process in the main bankruptcy case. Allowing that process to continue uninterrupted serves both the principles of uniformity in bankruptcy administration, as well as the prompt resolution of proofs of claim and related matters. The Defendants offer no substantive argument to the contrary. Where a bankruptcy court "is already familiar with the facts of the underlying action, then allowing that court to adjudicate the proceeding will promote uniformity in the bankruptcy administration." *Tow v. Park Lake Communities* (*In re Royce Homes, LP*)*,* 578 B.R. 748, 759 (Bankr. S.D. Tex. 2017).

This factor supports denial of the motion to withdraw the reference.

*Factor 4: Whether withdrawal would expedite the bankruptcy process.*

In the underlying bankruptcy cases, the Court has confirmed a plan. Accordingly, the outcome of this adversary proceeding does not bear heavily on the administration of the estate. *In re Quality Lease*, 2016 WL 416961, at *6. The existence of a confirmed plan, however, does not mean that no impact exists. So long as this adversary proceeding remains open, U.S. Trustee fees continue to accrue and an open bankruptcy case remains. Likewise, the potential recovery of $12 million and the disallowance of a significant claim will have a measurable effect on these cases.

In the light most favorable to the Defendants, the Court finds this factor to be neutral.

*Factor 5: Whether withdrawal produces forum shopping and confusion*.

This factor was not substantively addressed by the Defendants. The movant bears the burden to demonstrate that a particular factor weighs in favor of withdrawal of the reference. *In re Morrison*, 409 B.R. at 394. The Court takes notice of the concerted effort described above by the Defendants' replacement counsel to undo the actions and consents originally taken. While crossing no lines, forum shopping and delay are at the core of this process.

This factor supports denial of the motion to withdraw the reference.

*Factor 6: Whether withdrawal would foster a more economical use of the parties' resources*.

This factor was likewise not substantively addressed by the Defendants. As mentioned, the movant bears the burden to demonstrate that a particular factor weighs in favor of withdrawal of the reference. *In re Morrison*, 409 B.R. at 394. Based on its review of the parties' pleadings and the docket, the Court finds that it is familiar with the history of the case, the Contract, the Proof of Claim, the parties, and this adversary. This type of proceeding is at the core of the Court's duty and everyday expertise.

Considering the foregoing and in view of the District Court's unique situation in dealing with the effects of COVID on the rights of parties in the criminal justice system, the Court finds that this factor supports denial of the motion to withdraw the reference.

## Conclusion

Based on the application of the *Holland* factors and this Court's familiarity with the factual and legal issues presented, the Court recommends that the motion for withdrawal of the reference be denied in its entirety.

**SIGNED: July 7, 2022.**

_____
**DAVID R. JONES**
**UNITED STATES BANKRUPTCY JUDGE**